UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DONALD CORNELIUS JACKSON,

    Petitioner,

v.                                                            Civil Action No. 2:18-cv-179

HAROLD W. CLARKE, Director,
Virginia Department of Corrections,

    Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* Petitioner Donald Cornelius Jackson's ("Petitioner") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 ("the Petition"), ECF No. 1, and Respondent, Harold W. Clarke, Director, Virginia Department of Corrections' ("Respondent") Motion to Dismiss the Petition for Writ of Habeas Corpus, ECF No. 12. The matter was referred for disposition to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss, ECF No. 12, be **GRANTED**, and the Petition, ECF No. 1, be **DISMISSED WITH PREJUDICE.**

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 17, 1999, Petitioner pled guilty in the Circuit Court of Henrico County, Virginia ("Trial Court") and was convicted of three counts of robbery, three counts of use of a firearm, and possession of a firearm after felony conviction. ECF No. 15 at 3, 28-29. On February 3, 2000, Petitioner was sentenced by the Trial Court and is currently serving an eighty-year sentence with forty-two years suspended, resulting in an active sentence of thirty-eight years. *Id.* at 4; *see* ECF No. 13 at 2. Petitioner was housed in Henrico County Jail for 667 days between July 19, 1999, and May 16, 2001, during which time he received 2.25 days of sentencing credit per every thirty days. ECF No. 1 at 25; *see* ECF No. 15 at 34-36. On September 26, 1999, Henrico County Jail awarded Petitioner 3.21 days of extraordinary good time ("EGT"), prorated to 2.25 days so Petitioner's good time credit did not exceed the maximum 4.5 days per every thirty days served. ECF No. 1 at 25. On October 26, 1999, Henrico County Jail awarded Petitioner 3.21 days of EGT, prorated to 2.25 days so Petitioner's good time credit did not exceed the maximum 4.5 days per every thirty days served. *Id.* Petitioner is presently incarcerated at Deerfield Correctional Center, a facility owned and operated by the Virginia Department of Corrections ("VDOC"). ECF No. 11 at 1.

Petitioner became a VDOC inmate on May 16, 2001, and was automatically entered into the Earned Sentence Credit ("ESC") system as an ESC Level II. ECF No. 1 at 26. Under the ESC system, credits are awarded to inmates as follows:

| Level I | 4.5 days/30 days served |
| Level II | 3 days/30 days served |
| Level III | 1.5 days/30 days served |

2

      Level IV        0 days/30 days served

*Id.* On May 16, 2006, Petitioner was changed from a Level II to a Level III. ECF No. 1 at 25; ECF No. 15 at 37. On May 16, 2007, Petitioner was changed from a Level III to a Level IV. ECF No. 1 at 25; ECF No. 15 at 38. On May 16, 2009, Petitioner was changed from a Level IV to a Level I. ECF No. 1 at 25; ECF No. 15 at 39. Petitioner has been a Level I since May 16, 2009. ECF No. 1 at 25. Inmates are entitled to receive legal updates from VDOC related to any change in that inmate's ESC calculation, including changes to their ESC Level. *Id.* VDOC generated legal updates consistent with Petitioner's change in status. ECF No. 15 at 34-39. It is unclear, however, as Respondent claims, that Petitioner actually received all the legal updates to which he was entitled, consisted with the status changes noted above.[1] *Id.* at 26; ECF No. 15 at 15.

Petitioner states that in May 2015, he met with his Unit Manager who told him his good time credit release date had been miscalculated. ECF No. 1 at 17-18. On June 23, 2015, following Petitioner's inquiry, VDOC sent Petitioner a letter explaining the calculation of his good conduct credit. ECF No. 15 at 22. Petitioner filed a state habeas petition with the Trial Court on August 31, 2015, in which Petitioner sought relief for: (a) "The correction of earned jail and prison good time allowance credit based upon Virginia Code under the Rules and Regulations."[2] *Id.* at 6, 9. Embedded in Petitioner's claim was a due process argument that

---

[1] Respondent states Petitioner received each of his legal updates. ECF No. 1 at 26. Petitioner states he only received two of the many legal updates he was supposed to receive and only learned of the alleged miscalculation and changes in his ESC Level in May 2015 during a discussion he had with the Unit Manager. ECF No. 1 at 17; ECF No. 15 at 15.

[2] In his state habeas petition, Petitioner indicated that he had previously filed a state habeas petition with the Trial Court but no such petition appears in the state court record. However, there are several Section 1983 claims that Petitioner has previously raised both in state court and in this Court. *See* ECF No. 15 at 90-102 (identifying at least five prior § 1983 claims, including a claim pending in the Trial Court for which there is no final disposition in the record). Petitioner confirmed in his Petition that, at least at the time he filed the Petition, his most recent § 1983

3

Petitioner received no notice of changes to his ESC Level and no explanation for the changes to his ESC Level classification. *Id.* at 47, 49, 51, 53. On June 29, 2016, the Trial Court dismissed Petitioner's state habeas petition, finding that Petitioner received all the sentence-reducing credit from Henrico County Jail to which he is entitled, he received all the sentence-reducing credit from VDOC, and his sentence had been computed accurately and in accordance with Virginia law. *Id.* at 67-68. The Trial Court denied Petitioner's state habeas petition without addressing Petitioner's concerns about the correctness of his ESC Level classifications. *Id.* at 67-68. On July 13, 2016, Petitioner appealed to the Supreme Court of Virginia. *Id.* at 69. On May 2, 2017, the Supreme Court of Virginia found that the Trial Court committed no reversible error and refused Petitioner's state habeas petition. ECF No. 1 at 29.

Petitioner filed a *pro se* Section 2254 petition for federal habeas relief in the United States District Court for the Western District of Virginia on March 13, 2018. ECF No. 1. Giving Petitioner the benefit of liberal construction of his claims,[3] Petitioner appears to allege three claims:

> Claim One: VDOC improperly calculated Petitioner's good time credit under Virginia law (Va. Code § 53.1-32.1) for the time he spent in Henrico County Jail.
>
> Claim Two: Petitioner's constitutional right to equal protection was violated because Petitioner was not provided the same opportunity as other offenders in VDOC to enter VDOC as a Level I offender related to his good time credit calculation.[4]

---

claim was still pending in the Trial Court. ECF No. 1 at 20. Petitioner also indicated the subject of his § 1983 claim related to the same alleged miscalculation of his good time credits which is the basis for his instant Petition. *Id.*

[3] Petitioner puts forth two Grounds for relief, however these grounds are vague and virtually incomprehensible. Therefore, the Court interprets Petitioner's specific claims based on his Petition and his Affidavit attached thereto, and in light of the complaints raised in his state habeas petition.

[4] While Petitioner does not specifically identify that his constitutional right to equal protection in his Ground Two (identified herein as Claim Two), Petitioner submitted with the Petition an Affidavit which makes it clear he is asserting a Fourteenth Amendment equal protection claim. ECF No. 1 at 23. Petitioner's Memorandum states:

> 32. The Fourteenth Amendment is limited to state action and prohibits a state to "deny any person within its jurisdiction equal protection of the laws, such that "all persons with similarly situated should be treated alike."

4

> Claim Three: VDOC violated Petitioner's right to due process by failing to notify him of the reason for unfavorable changes to his ESC Level.[5]

*Id.* at 5-6, 18, 21. On April 3, 2018, the United States District Court for the Western District of Virginia found that proper venue exists in the Eastern District of Virginia and transferred Petitioner's case to this Court for resolution. ECF Nos. 2-3. On November 26, 2018, Respondent filed a Rule 5 Answer, *Roseboro* Notice, Motion to Dismiss, and Memorandum in Support of Motion to Dismiss. ECF Nos. 11-14. On December 19, 2018, Petitioner filed a response to Respondent's Motion to Dismiss. ECF No. 16. Respondent filed no reply and the time for doing so has expired.

Because the evidence before the Court was devoid of any reason or explanation for Petitioner's ESC Level classifications over time and because there was no evidence before the Court demonstrating that Petitioner was notified of the same, the Court entered an Order on February 27, 2019, directing an expansion of the record consistent with *Winston v. Pearson*, 683 F.3d. 489, 501 (4th Cir. 2012). ECF No. 18 at 2-3. In that Order, the Court directed Respondent to submit evidence directly addressing whether Petitioner was entitled to notice of changes to his ESC Level and whether he actually received notice of changes to his ESC Level, the reason for

---

> 33. I'm not being treated fairly as my counter-parts/offenders that have been convicted after January 1, 1995, in order to earn 4.5 days for every 30 days served. I am not being provided adequate reasoning on why I am being penalized to earn good time credit or it allow my Class Level as the Operating Procedure as required for me to earn.
> 34. It's a hardship upon me not being placed in the correct Class Level and not receiving the correct earned good time credit. For VDOC Classification Unit to penalize me by dropping my class level without any reasonings [sic] given, it placed me in a position not to receive certain benefits as those that are in the Class Level I earning 4.5 days for every 30 days served.

*Id.*

[5] Petitioner does not distill this as a ground for relief on the federal habeas petition form, however, Petitioner clearly articulates this as a complaint in his accompanying Affidavit. *See* ECF No. 1 at 19, 22-23. Additionally, while Petitioner has not specifically identified this claim as a Due Process claim, but rather implies a Due Process violation by the nature of his complaints.

5

Petitioner's initial assignment as an ESC Level II and reason for subsequent changes to his ESC Level in 2006, 2007, and 2009 respectively, and what process Petitioner was owed regarding his ESC Level and what due process he actually received related to changes in his ESC Level. ECF No. 18 at 7. Respondent complied with the Court's Order on March 20, 2019, by filing a response and submitted the affidavit of Donna M. Shifflett and numerous additional documents. ECF No. 19. Petitioner filed a reply to Respondent's evidence on April 4, 2019. ECF No. 20. Accordingly, Respondent's Motion to Dismiss, ECF No. 12, is ripe for recommended disposition.

## II. DISCUSSION

Giving Petitioner the benefit of liberal construction, Petitioner appears to make three main claims. First, Petitioner contests the calculation of good time credit for the 667 days he served in Henrico County Jail between July 19, 1999, and May 16, 2001, was done incorrectly and in violation of the Virginia Code. ECF No. 1 at 18. Second, Petitioner appears to allege that when he was transferred to VDOC he was identified as an ESC Level II instead of an ESC Level I and was not provided the same opportunity as other offenders in VDOC to enter VDOC as a Level I offender related to his good time credit calculation. ECF No. 1 at 6, 23. Third, Petitioner appears to argue that VDOC violated Petitioner's right to due process by failing to notify him of the reason for unfavorable changes to his ESC Level. ECF No. 1 at 19, 22-23.

A. <u>Statute of Limitations</u>

Before the Court can consider the merits of a Petitioner's claims it must ensure Petitioner has complied with procedural requirements for federal habeas review. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to

6

establish a one-year period of limitation within which a petition must file a petition for writ of habeas corpus by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d) provides:

> 1. A 1-year period of limitation shall apply to any application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> 2. The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner now challenges the execution of his sentence rather than the judgement of conviction. Therefore, § 2244(d)(1)(D) determines the date upon which the limitations period began to run. *See Karim v. Pearson*, 2017 U.S. Dist. LEXIS 121976, at *8 (E.D. Va. Aug. 1, 2017). Thus, the date on which the statute of limitations began to run for Petitioner's claims for improper calculation of his good time credit is the date Petitioner either did discover or could have discovered, through the exercise of reasonable diligence, that VDOC made the alleged improper

7

calculation of Petitioner's good conduct time. Based on Respondent's response to the Court's February 27, 2019 Order, the question as to the relevant dates have been answered.

Concerning Claim One, it is not entirely clear from the record presently before the Court when Petitioner *could have*, with reasonable diligence, discovered the alleged miscalculation of his good time credit for the time he served in Henrico County Jail between July 19, 1999, and May 16, 2001. Petitioner alleged he only received two out of a number of legal updates to which he was entitled. ECF No. 15 at 16. However, in connection with Petitioner's state habeas petition, Petitioner specifically discussed his receipt of the aforementioned legal updates and provided copies of the same. *See* ECF No. 15 at 16-17, 19-20. The first Legal Update was dated June 5, 2002, and reflected his good time credit for the 667 days he was in Henrico County Jail. *Id.* at 16, 19. Although Petitioner contends he first became aware of the improper calculation of his good time credit in May 2015, ECF No. 1 at 7, 15, 17-18, his receipt of the 2002 Legal Update demonstrates that Petitioner was aware, at least as early as 2002, of the good time credit afforded him for the time he spent in Henrico County Jail. ECF No. 15 at 16. Using the date that Petitioner was admittedly aware of his good time credit calculation for the 667 days in Henrico County Jail, Petitioner would have had until June 5, 2003, to file a federal habeas petition under AEDPA.[6] Thus, the Court **FINDS** that Petitioner's Claim One is time barred under the AEDPA.

Concerning Claim Two, it is equally unclear from the record presently before the Court when Petitioner *could have*, with reasonable diligence, discovered he was being treated differently from other prisoners by being initially designated to allegedly the wrong ESC Level.

---

[6] Notably, the filing of a state habeas petition tolls the statute of limitations under the AEDPA. However, this is irrelevant when applied to the instant circumstance because Petitioner did not file his state habeas petition until August 31, 2015, well after the AEDPA statute of limitations had expired.

8

Petitioner contends he should have been identified and received good time credit consistent with ESC Level I upon being sent to VDOC—like other prisoners—but was wrongfully designated as an ESC Level II. ECF No. 1 at 6, 19, 21-22. Petitioner appears to allege that he should have been an ESC Level I for his entire tenure with VDOC due to his good behavior and should have received—consistent with ESC Level I status—the maximum good conduct credit permitted. *Id.*; *see also* ECF No. 1 at 19. In connection with Petitioner's state habeas petition, Petitioner discussed his receipt of two legal updates, the first of which was dated July 5, 2002, and identifies Petitioner as an ESC Level II. ECF No. 15 at 16, 19; *see also* ECF No. 1 at 19. Although Petitioner contends he first became aware of the improper calculation of his good time credit in May 2015, ECF No. 1 at 7, 15, 17-18, his receipt of the 2002 Legal Update demonstrates that Petitioner was aware of his designation as an ESC Level II at least as early as 2002, ECF No. 15 at 19. Using this date to determine the applicable AEDPA statute of limitations, Petitioner would have had until June 5, 2003, to file a federal habeas petition under the AEDPA.[7] Thus, the undersigned **FINDS** that Petitioner's Claim Two is time barred under the AEDPA.

Concerning Claim Three, Petitioner's argument surrounds two unfavorable changes to his ESC Level following his initial designation as an ESC Level II. Petitioner contests (1) the May 16, 2006 status change from an ESC Level II to an ESC Level III and (2) the May 16, 2007 status change from an ESC Level III to an ESC Level IV.[8] ECF No. 1 at 19, 22-13. The record

---

[7] Notably, the filing of a state habeas petition tolls the statute of limitations under the AEDPA. However, this is irrelevant when applied to the instant circumstance because Petitioner did not file his state habeas petition until August 31, 2015, well after the AEDPA statute of limitations had expired.

[8] Although discussed, Petitioner does not appear to contest or question the basis for his May 16, 2009 status change from ESC Level IV to ESC Level I. Nonetheless, the Court did inquire about this change in its Order seeking additional evidence from Respondent. ECF No. 18 at 7.

presently before the Court does not make clear when Petitioner *could have*, with reasonable diligence, discovered each of these changes to his ESC Level. As to the May 16, 2006 change from ESC Level II to ESC Level III, Petitioner contends he first became aware of the improper calculation of his good time credit in May 2015. ECF No. 1 at 7, 15, 17-18. However, related to his state habeas petition, Petitioner discussed his receipt of a December 14, 2006 Legal Update and submitted a copy of the same. ECF No. 15 at 16, 20. This 2006 Legal Update discussed a change in his ESC Level to ESC Level III. ECF No. 15 at 16, 20. Petitioner's receipt of the 2006 Legal Update demonstrates that Petitioner was aware of his designation as an ESC Level III at least as early as December 14, 2006.[9] Using this date to determine the applicable AEDPA statute of limitations, Petitioner would have had until December 14, 2007, to file a federal habeas petition under the AEDPA. As to the May 16, 2007 change from ESC Level III to ESC Level IV, Petitioner contends he first became aware of the improper calculation of his good time credit in May 2015. ECF No. 1 at 7, 15, 17-18. However, Petitioner signed an Institution Classification Hearing Form on June 20, 2007, acknowledging that he received a copy of the recommendation that Petitioner's ESC Level be changed from Level III to Level IV. ECF No. 19, attach. 1 at 63. Using this date, a date which Petitioner actually knew of the change in his ESC Level, to determine the applicable AEDPA statute of limitations, Petitioner would have had until June 20, 2008, to file a federal habeas petition under the AEDPA. Thus, the undersigned **FINDS** that Petitioner's Claim Three is time barred under the AEDPA.

---

[9] Petitioner also signed a hearing form in which he confirmed he had received notification of his 2006 annual review hearing on May 30, 2006, and confirmed his receipt of the recommendation that his ESC Level be changed from ESC Level II to ESC Level III on June 9, 2006. ECF No. 19, attach. 1 at 62.

10

C. <u>The Merits of Petitioner's Claims</u>

The Court has determined that Petitioner is time barred from raising his instant claims, however, even if Petitioner's claims were raised timely, Petitioner's claims necessarily fail on the merits.

*1. Claim One: VDOC improperly calculated Petitioner's good time credit under Virginia law (Va. Code § 53.1-32.1) for the time he spent in Henrico County Jail.*

Pursuant to Claim One, Petitioner argues that he was not properly allocated all the good time credit that he was owed for the 667 days he was housed in Henrico County Jail between July 19, 1999, and May 16, 2001, during which time he allegedly received 2.25 days of sentencing credit per every thirty days, including two periods where Petitioner was awarded 3.21 days of extraordinary good time that was prorated to 2.25 days so Petitioner's good time credit did not exceed the maximum 4.5 days per every thirty days served. ECF No. 1 at 25. Petitioner raised this argument on his state habeas petition and on June 29, 2016, the Trial Court dismissed Petitioner's state habeas petition, finding that Petitioner received all the sentence-reducing credit from Henrico County Jail to which he is entitled in accordance with Virginia law and the Virginia Supreme Court agreed. ECF No. 15 at 67-68.

This Court may not review Petitioner's Claim One because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. . . . [A] federal court is limited to deciding . . . violat[ions of] the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal courts only have authority to review a state court's adjudication of claims arising under federal law and may grant habeas review only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d). Therefore, because

11

Petitioner's Claim One is based on Virginia Code § 53.1-32.1, a Virginia state law, the Court may not review the state court's decision on that issue.

> *2. Claim Two: Petitioner's constitutional right to equal protection was violated because Petitioner was not provided the same opportunity as other offenders in VDOC to enter VDOC as a Level I offender related to his good time credit calculation.*

Notably, Petitioner did not raise an equal protection argument in his state habeas petition,[10] but rather argued that he was improperly classified as an ESC Level II because there was simply no reason he, having made no mis-steps in Henrico County Jail, should be decreased to an ESC Level II rather than being classified as ESC Level I upon entering VDOC's custody.[11] ECF No. 15 at 47. Petitioner's Claim Two in the instant Petition presents a slightly different argument – that Petitioner was treated differently from other similarly situated inmates when he was initially classified as an ESC Level II instead of an ESC Level I. ECF No. 1 at 23. The Equal Protection Clause "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, at 439 (1985) (internal quotation marks omitted) (internal citations omitted).

A person alleging an equal protection claim must first demonstrate he is being treated differently from those similarly situated. Petitioner has not put forth a single example of another individual inmate, subject to the same classification rules as Petitioner, who was not initially assigned to ESC Level II. Here, Petitioner compares himself to a "pre-1995 release for the purpose of being considered for earned sentence credit" but concedes that, since he is not a pre-1995 release himself "[P]etitioner is not similarly situated to a pre-1995 release for the purpose

---

[10] As such, Petitioner has failed to exhaust this claim.
[11] This, like Petitioner's Claim One, is not based on an application of federal law.

12

of being granted earned sentence credit." ECF No. 16 at 4. Further, Petitioner asserts in a conclusory manner that he has been discriminated against, but has not clearly articulated upon what classification that discrimination is based (*e.g.*, race, religion, national origin, gender, etc.). As such, Petitioner has failed demonstrate that his rights under the Equal Protection Clause have been violated.

>    *3. Claim Three: VDOC violated Petitioner's right to due process by failing to notify him of the reason for unfavorable changes to his ESC Level.*

Petitioner contends that his due process rights were violated because he was not notified of the reason for unfavorable changes to his ESC Level in connection with a May 16, 2006 level change from an ESC Level II to an ESC Level III and a May 16, 2007 level change from an ESC Level III to an ESC Level IV, in connection with Petitioner's annual review and argues there was no basis for these reclassifications. ECF No. 1 at 19, 22-23. Petitioner did raise this argument in his state habeas petition, ECF No. 15 at 47, 49, 51, 53, but this argument was never directly addressed by the Trial Court or the Supreme Court of Virginia, *id.* at 67-68. As such, the Court now considers this argument.

"The Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." *Hewitt v. Helms*, 459 U.S. 460, 465 (1983). Despite this, "[l]iberty interested protected by the Fourteenth Amendment may raise from two sources – the Due Process Clause itself and the law of the States." *Id.* at 466. A state may "create a liberty interest protected by the Due Process Clause through its enactments of certain statutory and regulatory measures." *Id.* at 470. In the instant circumstance, "[f]ormal Due Process is not required for an increase in an offender's Security Level or GCA/ESC Class Level during a general population offender's Annual Review." Operating Procedure 830.1(IV)(B)(3)(a). Additionally, however "an offender

should be allowed to be present and permitted input during the review process and receive a copy of the outcome of the review." *Id.* The record before the Court, as provided by Respondent in response to the Court's Order, shows that Petitioner signed a form demonstrating he was notified of his annual review hearing in 2006 and 2007, was permitted to participate, and was notified of the rationale and result of both his 2006 and 2007 annual reviews. ECF No. 19, attach. 1 at 62-63. Therefore, it appears that Petitioner has been afforded all the process to which he is entitled under Virginia's statutes and regulations. Therefore, Petitioner has failed to demonstrate he was denied due process.

### III. RECOMMENDATION

For the reasons stated herein, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss, ECF No. 12, be **GRANTED**, and the Petition, ECF No. 1, be **DENIED AND DISMISSED WITH PREJUDICE.**

### IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge will make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is

made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to *pro se* Petitioner and counsel of record for Respondent.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
May 3, 2019